IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN THE MATTER OF THE ARBITRATION OF CERTAIN CONTROVERSIES BETWEEN SCIENCE APPLICATIONS INTERNATIONAL CORPORATION, 1710 SAIC Drive McLean, VA 22102, | Civil Action No. _____ |
| Petitioner, | |
| and | |
| THE HELLENIC REPUBLIC, 68, Akadimias Street 10678 Athens, Greece, | |
| Respondent. | |

**PETITION TO CONFIRM
ARBITRATION AWARD AND TO ENTER JUDGMENT**

Science Applications International Corporation ("SAIC") respectfully petitions this Court to confirm the International Chamber of Commerce, International Court of Arbitration (the "ICC") arbitral award described herein.  The ICC tribunal determined that the Hellenic Republic, ("Respondent") is liable to SAIC for breach of contract and is ordered to pay € 39,818,298 damages, arbitration costs totaling $162,500  plus simple interest at the rate of six percent.

Confirmation in this case is expressly authorized by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention")[1] as implemented in Chapter 2 of the Federal Arbitration Act, codified at 9 U.S.C. § 201, *et seq.*

---

[1] December 29, 1970, 21 U.S.T. 25157, T.I.A.S. No. 6997, 390 U.N.T.S. 38 (1970).

SAIC respectfully states as follows:

1.      On July 2, 2013, an arbitral tribunal of three distinguished Greek arbitrators pursuant to an arbitration sited in and conducted for four years in Athens, Greece, rendered a final award (the "Final Award") in the case commenced by SAIC, as Claimant, against the Hellenic Republic, as Respondent, before the ICC International Court of Arbitration, ICC Arbitration Case No. 16394/GZ/MHM.  Documents relevant to this Petition are authenticated by and attached as exhibits to the accompanying Declaration of Marques O. Peterson dated July 12, 2013 (the "Peterson Decl." or Exhibit A).

2.      The Final Award granted monetary relief against the Hellenic Republic in the amount of € 39,818,298 and arbitration costs totaling $162,500.  The Final Award also awarded simple interest at the rate of six percent from the date that the Hellenic Republic was served the award on amounts of € 38,751,920 and $162,500 amount.  SAIC seeks confirmation of the Final Award and enforcement of the monetary relief granted in the Final Award.

3.      A copy of an authenticated original of the Final Award is attached to the Peterson Declaration as Exhibit 1.[2]

Parties

4.      Petitioner is a wholly-owned subsidiary of SAIC, Inc. located at 1710 SAIC Drive, McLean, VA 22102.

5.      Respondent, the Hellenic Republic, is a foreign state under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1602 *et. seq.*  The address for Respondent is 68, Akadimias Street, 10678 Athens, Greece.

---

[2]  The attached Final Award is in Greek, the required language of the arbitration.  Petitioner is presently having the Final Award translated and will file a certified translation as soon as the translation is completed.  The ICC sent the Final Award to the parties on July 8, 2013.

<u>Jurisdiction and Venue</u>

6.     This Court has subject matter jurisdiction pursuant to two statutory bases: first, 28

U.S.C. § 1330(a) and 28 U.S.C. § 1605(a)(6); and second, 9 U.S.C. § 203.

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a) to

confirm an arbitral award against a foreign state provided that the foreign state does not have

immunity.  Title 28 U.S.C. § 1330(a) states:

> The district courts shall have original jurisdiction without regard to
> amount in controversy of any nonjury civil action against a foreign
> state as defined in section 1603(a) of this title as to any claim for
> relief *in personam* with respect to which the foreign state is not
> entitled to immunity either under sections 1605-1607 of this title or
> under any applicable international agreement.

28 U.S.C. § 1330(a).

8.     The Hellenic Republic is not entitled to immunity because this is an action under

28 U.S.C. § 1605(a)(6) to confirm an arbitration award under the New York Convention, a treaty

providing for the recognition and enforcement of arbitral awards to which the United States is a

party.

9.     The Final Award is governed by the New York Convention because: (i) the award

arose from a commercial legal relationship between the parties; (ii) there was an agreement in

writing to arbitrate any dispute(s) arising from that relationship; (iii) the agreement provided for

arbitration proceedings to take place in Greece, a signatory to the New York Convention; and

(iv) at least one of the parties is not an American citizen.  *See* 9 U.S.C. § 202.

10.     The second basis for this Court's subject matter jurisdiction is Section 203 of the

Federal Arbitration Act, which provides jurisdiction to enforce an arbitration award governed by

the New York Convention stating:

> An action or proceeding falling under the Convention shall be
> deemed to arise under the laws and treaties of the United States.

> The district courts of the United States (including the courts
> enumerated in section 460 of title 28) shall have original
> jurisdiction over such an action or proceeding, regardless of the
> amount in controversy.

9 U.S.C. § 203.

11.     This Court has personal jurisdiction over the Hellenic Republic pursuant to 28

U.S.C. § 1330(b), which provides that personal jurisdiction over a foreign state shall exist as to

every claim for relief for which the district court has jurisdiction under 28 U.S.C. § 1330(a) and

where service has been made pursuant to 28 U.S.C. § 1608.  Petitioner is serving the Hellenic

Republic pursuant to 28 U.S.C. § 1608.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(f)(4), which provides

that a civil action against a foreign state may be brought in the United States District Court for

the District of Columbia.

<u>Facts</u>

13.     In May 2003, the Hellenic Republic[3] and SAIC entered into a contract for the

development and delivery of a Command, Control, Communications, Coordination, and

Integration System (the "C4I System").[4]  The C4I System consists of 30 integrated subsystems

and provides the public safety infrastructure for the Hellenic Republic, Fire Brigade, Coast

Guard, and Ambulance Service.  In accordance with the Contract, SAIC developed the C4I

---

[3] The Hellenic Republic has been lawfully represented in this arbitration by the Ministry of Interior.  When part of
the Ministry of the Interior was split off and was named the Ministry of the Protection of the Citizens, the Ministry
of the Protection of the Citizens became a lawful representative of the Hellenic Republic. The  Ministry of the
Protection of the Citizens was then renamed the Ministry of Public Order and the Protection of the Citizens. The
Hellenic Republic has also  been lawfully represented in this arbitration by the Ministry of Finance, which according
to law is the ministry which represents the Hellenic Republic  in all litigation.

[4]  *See* Exhibit 2 to the Peterson Decl., (Contract No. 020A/03 for the Procurement of Olympic Security C4I Systems
& Related Products and Services).  The exhibits filed in this petition are the original Greek language documents and
the undisputed English translations used throughout the ICC arbitration.

System which served as the Hellenic Republic's central public security component during the 2004 Summer Olympic Games in Athens.

14.    The Hellenic Republic used the C4I System during the Olympic and Para-Olympic Games to prevent the occurrence of any major security or terrorist event. Thereafter, for nearly two years, the Hellenic Republic continued to use the C4I System; however, it refused to formally accept the C4I System and to pay SAIC. SAIC initiated arbitration at the ICC in April 2006 after its numerous attempts to obtain payment failed. This first arbitration is not the subject of this petition.

15.    In the 2006 arbitration, SAIC alleged that the Hellenic Republic's refusal to accept the C4I System and make long-overdue payments related to its delivery was both a breach of contract and good faith. In response to the 2006 arbitration, the Hellenic Republic finally began negotiating a resolution to its impasse. These negotiations resulted in a settlement embodied in a major modification, Modification No. 5, to the Contract.

16.    The parties signed Modification No. 5 on March 29, 2007.[5] Modification No. 5 changed both the terms by which the Greek State would accept the System and the corresponding obligations of both parties.[6] Under Modification No. 5, most of the subsystems were to be accepted shortly after the parties' execution of Modification No. 5 because they had been in use. Certain other subsystems, specifically the CDSS subsystems of the C4I System, were to be updated based upon clarified contractual requirements agreed to by the parties.

---

[5]  *See* Exhibit 3 to the Peterson Decl., (Modification No. 5).

[6]  There were a total of 7 modifications to the contract; however, it was Modification No. 5 that resolved the issues under the original contract and provided for post-Olympic enhancement and use of the C4I System.

Modification No. 5 left unchanged the general terms and conditions of the contract including the dispute resolution provision.  Modification No. 5 had a 19-month period of performance.[7]

17.     On October 28, 2008, SAIC delivered to the Hellenic Republic the C4I System pursuant to Modification No. 5.  This delivery followed months of development, installation, and testing of the C4I System, including separate testing of the CDSS subsystems that were updated pursuant to Modification No. 5.  On November 14, 2008, the Hellenic Republic issued the C4I System Quantitative and Qualitative Receipt Protocol formally accepting the C4I System.  After acceptance, the value of any omissions in the C4I System or deviations from specifications were going to be a subject of the discussions between the Parties. In case no agreement were reached, each party would have recourse to arbitration.

## The Hellenic Republic Breached the Contract

18.     Despite accepting the C4I System and the explicit contractual obligations to make payment and promptly enter into negotiations on the final value of any alleged omissions and deviations from the contractual requirements, the Hellenic Republic breached its obligations under Modification No. 5.  Thus, in this arbitration, SAIC sought the final contractual payment due upon acceptance plus reimbursement of the applicable value added tax.  SAIC also sought the part of the final contractual payment that the Hellenic Republic had withheld for alleged omissions and deviations because the Hellenic Republic refused to enter into such negotiations.

19.     The Hellenic Republic also refused to release SAIC's letters of credit following acceptance of the C4I System, as the contract required, and after the institution of this arbitration terminated the contract for default and drew against the letters of credit in the amount of 18,877,376 Euros.   SAIC also claimed this as damages in the arbitration.  These actions by the

---

[7] *See* Exhibit 4 to the Peterson Decl., (Modification No. 6).  Modification No. 6, executed on September 11, 2007, provided for a 19-month performance period by setting the performance deadline as October 29, 2008.

Hellenic Republic caused economic hardship for SAIC in its global contract activities. Total SAIC-claimed damages in the arbitration from the Hellenic Republic's breaches exceeded €122,073,557.

<u>The Parties Agreed to Arbitrate All Disputes</u>

20.     Modification No. 5 contained a dispute resolution provision providing for final resolution of any dispute(s) by arbitration under the Rules of the International Chamber of Commerce ("ICC") in Article 28.  Article 28 states in relevant part:

> 28.3 Any claim or dispute arising from or related to the current Contract or its interpretation is to be finally resolved by Arbitration according to the Rules of Arbitration of the International Chamber of Commerce (ICC) and shall be tried under Greek Law. Arbitration shall take place in Athens, Greece, by three Greek Arbitrators appointed in accordance with the Rules of the International Chamber of Commerce (ICC) and one Arbitrator shall be appointed by the BUYER [the Hellenic Republic], the second Arbitrator shall be appointed by the SUPPLIER [SAIC] and the third Arbitrator, acting as Chairman, shall be appointed by the other two appointed Arbitrators, or, in case of disagreement, according to the above mentioned Rules.

> 28.4 The language of the Arbitration procedure and the decision shall be Greek.

> 28.5 According to all the above, each Arbitration decision shall be final and binding to both Parties. The arbitration award shall be declared executable by any competent Court following petition of either Party. Performance of the parts of this present Contract which are not affected by the dispute, being arbitrated, shall not be suspended in the period during which the Arbitration procedure takes place.

*See* Exhibit 2 to Peterson Decl., Modification No. 5, Article 28 at 69; Exhibit 5 to Peterson Decl., Modification No. 7, Article 28 at 69.

<u>The Arbitration before the ICC</u>

21.      SAIC filed a request for arbitration ("RFA") on June 16, 2009.  SAIC's request

for arbitration came only after many months of good faith attempts to get the Hellenic Republic

to comply with Modification No. 5.  The Hellenic Republic filed its answer to SAIC's RFA on

September 29, 2009.

22.      The parties selected arbitrators in accordance with the dispute resolution provision

in Modification No. 5 discussed above.  The Hellenic Republic selected Ms. Styliani Charitaki.

Ms. Charitaki is a member of the Hellenic Republic Legal Council of State of the Hellenic

Republic.  SAIC selected the Honorable Dionysios G. Kondylis as its party arbitrator.  Justice

Kondylis is a retired justice and honorary member of the Supreme Court of the Hellenic

Republic.  After Ms. Charitaki and Justice Kondylis were unable to agree to a chair, the ICC as

the appointing authority selected Mr. Grigorios Timagenis as the Tribunal's Chairman.  Mr.

Timagenis is a prominent attorney in Greece, and is the founding and senior partner of the

Timagenis Law Firm, a maritime and commercial law firm located in Piraeus, Greece.

23.      On July 21, 2010, the Tribunal issued the Terms of Reference for the arbitral

proceedings.  The Terms of Reference called for, *inter alia*, the submission of two rounds of

simultaneous briefs, allowed for the submission of ten total witness statements per party, a

hearing to be held in Athens, Greece, and the submission of a post-hearing brief.

24.      Throughout the arbitration, the Hellenic Republic consistently tried to delay the

arbitration, repeatedly asking for extensions at every step of the Arbitration and refusing to pay

its share of the advance payment to the ICC of arbitration costs.  The Hellenic Republic also took

actions outside the arbitration such as declaring the "non-acceptance" of the C4I System in May

2010 after, as was the case with its drawn down of SAIC's letters of credit, SAIC had instituted

this arbitration to enforce, *inter alia*, the Hellenic Republic's formal acceptance and the return of those letters of credit.

25.     The Hellenic Republic also simultaneously moved the ICC to remove the arbitrator appointed by SAIC, the Honorable Dionysios Kondylis, retired Justice and current Honorary Member of the Supreme Court of the Hellenic Republic.  When the ICC rejected the challenge, the Hellenic Republic proceeded to apply to the Greek courts to have Justice Kondylis removed.  Moreover, the Hellenic Republic petitioned the Tribunal to stay arbitration proceedings until after the Greek Court had ruled, which the Tribunal rejected.  On March 15, 2011, the Greek Court also rejected the challenge to Justice Kondylis.

26.     Between July 2010 and December 2010, the parties briefed numerous jurisdictional and other procedural motions, as directed by the Tribunal.  The Hellenic Republic attempted to have the arbitration dismissed for, *inter alia*, lack of jurisdiction and lack of ripeness.  SAIC moved to have the arbitration bifurcated and to exclude certain pleadings filed by the Hellenic Republic. The Tribunal held a procedural hearing on December 17, 2010 in Athens, Greece.  The Tribunal denied both parties' motions in an Interim Award issued on July 21, 2011.

27.     On December 16, 2011, SAIC filed its Statement of Claim along with seven witness statements.  On that same day, the Hellenic Republic filed its Statement of Defense and six witness statements.  On March 16, 2012, SAIC filed its Reply brief and also submitted three witness statements; that same day the Hellenic Republic filed its Reply brief and submitted three witness statements.  In its briefs, the Hellenic Republic renewed some of its procedural motions that the Tribunal had denied in the Interim Award.

28.    The Tribunal held a Hearing in Athens, Greece.  The Hearing took place over eight days on the following dates: May 10, 2012 to May 12, 2012 and May 14, 2012 to May 18, 2012.  Following the Hearing, on July 26, 2012, the parties filed post-Hearing briefs.  Finally, on July 2, 2013, the Tribunal issued the Final Award.

<u>The Final Arbitration Award</u>

29.    On July 8, 2013, the ICC Secretariat served the parties an electronic courtesy copy of the Tribunal's Final Arbitration Award decision, and in the days following served the parties by overnight courier.  *See* Peterson Decl. at para. 6.  The over four-hundred-page Final Award evidences the complex and technical substantive and procedural adjudication of the case by the Tribunal.  *See* Peterson Decl. at para. 10; Exhibit 1.  Parts of the Final Award are by unanimous decision, while other parts are by majority decision with a dissent or the Tribunal Chairman's prevailing opinion with dissents.  *See* Exhibit 1 to Peterson Decl.

30.    The Tribunal found in favor of SAIC on several of its claims  for a total of € 53,054,240.  This amount included an award of € 30,704,053 on SAIC's claims arising out of the Hellenic Republic's final acceptance of the C4I System, improperly withheld amount for alleged omissions and deviations, and Value Added Tax payments.  *See id.* at para. 186, 201. The Tribunal also awarded SAIC € 18,997,994 on its claims for the Hellenic Republic's unlawful drawdown of letters of guarantee.  *See id.* at para. 222. Additionally, the Final Award also granted SAIC € 3,352,193 on its claims for other damages including € 1,066,378  for interest on contractual payments that the Hellenic Republic had made late to SAIC during the course of the contract after contractually-specified deadlines.  *See id.* at para. 250, 253, 312.

31.    The Tribunal found in favor of some of the Hellenic Republic's set-off defenses for a total set-off against SAIC's award of € 13,235,941.  *See id.* at para. 470-477.  The Tribunal denied all the Hellenic Republic's renewed procedural motions.  Accordingly, the Final Award

orders the Hellenic Republic to pay SAIC € 39,818,298, which is the net amount of the amount awarded to SAIC € 53,054,240 and the set-off awarded to the Hellenic Republic of € 13,235,941.  *See id.* at para. 675.  The Final Award also orders the Hellenic Republic to pay SAIC certain arbitration costs totaling $162,500.  *See id.* at para 687.

32.     Finally, the Tribunal awarded SAIC simple interest of 6% from the date that the Hellenic Republic was served the award, which is Thursday, July 11, 2013.  *See id.* at para. 681. The Tribunal awarded this interest on the $162,500 arbitration costs and on € 38,751,920.  The € 38,751,920 amount is equal to the net award € 39,818,298 amount excluding the € 1,066,378 portion of the award that is an award of interest on late payments.  *See id.* at para. 681.

CLAIMS FOR RELIEF<br>(9 U.S.C. § 207)

First Claim for Relief<br>(Confirmation of the Award's Monetary Relief)

33.     Petitioner repeats and re-alleges each and every allegation contained in paragraphs 1 through 32, above, inclusive, and incorporates them herein by reference.

34.     The U.S. is a contracting party to the New York Convention.

35.     The New York Convention has been implemented in the U.S. by Chapter Two of the Federal Arbitration Act.

36.     The Final Award is governed by the New York Convention because it was rendered in Greece, another contracting party, and satisfies the requirements of Section 202 of the Federal Arbitration Act.  *See* 9 U.S.C. § 202.

37.     The Federal Arbitration Act provides that the "court *shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207 (emphasis added).

38.     None of the grounds available for refusal or deferral of recognition and enforcement of an award specified in the New York Convention apply to the Final Award.

39.     Therefore, the Final Award should be confirmed pursuant to 9 U.S.C. § 207 and judgment in the United States should be entered for the monetary relief awarded by the Tribunal.

<u>Second Claim for Relief</u>
<u>(Prejudgment Interest on Amounts Due under the Final Award)</u>

40.     Petitioner repeats and re-alleges each and every allegation contained in paragraphs 1 through 39, above, inclusive, and incorporates them herein by reference.

41.     The Final Award includes interest at a rate of six percent from the date that the Hellenic Republic is served with the Final Award decision on sums owed, with one exception, up to the day upon which final payment is made.   The one exception is that interest should not accrue on € 1,066,378 of the awarded amount.

42.     Therefore, the Court should award Petitioner's prejudgment interest on all amounts awarded under the Final Award from the respective dates specified in the Final Award until the entry of judgment at the rates specified in paragraph 681 of the Final Award.

**<u>WHEREFORE, Petitioner respectfully requests an order:</u>**

(a)     confirming the Final Award, including the monetary relief granted in and entering judgment in favor of Petitioner and against Respondent in Euros and US dollars in accordance with the Final Award;

(b)     awarding prejudgment interest, from July 11, 2013, the date the Hellenic Republic was served with the Award, to the date of entry of a judgment confirming the Final Award as specified in paragraph 681 of the Final Award;

(c)     awarding postjudgment interest at the statutory rate;

(d)     granting such other and further relief as the Court deems just and proper.

Dated: Washington, D.C.
July 12, 2013

12

Respectfully submitted,


/s/ Allen B. Green
Allen B. Green (D.C. Bar No. 222158)
William T. O'Brien (D.C. Bar No. 450891)
Ivan W. Bilaniuk (D.C. Bar. No. 494315)
Marques O. Peterson (D.C. Bar No. 988325)
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 496-7500
Fax: (202) 496-7756

*Attorneys for Petitioner*
*Science Applications International Corporation*