UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In The Matter of the Arbitration of Certain Controversies Between | : |
| | : |
| | : |
| | : |
| | : |
| SCIENCE APPLICATIONS INTERNATIONAL CORP., | : |
| | : |
| | : Civil Action No. 13-cv-1070(GK) |
| Petitioner, | : |
| | : |
| and | : |
| | : |
| THE HELLENIC REPUBLIC, | : |
| | : |
| Respondent. | : |
| | : |

## MEMORANDUM OPINION

On July 12, 2013, Petitioner Science Applications International Corporation ("Petitioner" or "SAIC"), now "Leidos, Inc.," filed a Petition to Confirm Arbitration Award ("Petition") [Dkt. No. 1] against Respondent, The Hellenic Republic ("Respondent" or "Hellenic Republic"). The Petitioner now asks this Court to confirm an arbitration award granted by the International Chamber of Commerce International Court of Arbitration ("ICC") and to enter judgment against the Hellenic Republic.

I.    BACKGROUND

On September 5, 2013, while the Petition with this Court was pending, the Hellenic Republic filed an action to set aside the ICC award in the Athens Court of Appeals. See Pet.'s Motion to

Confirm Arbitration Award and to Enter Judgment at 2-3 [Dkt. No. 20]. On March 27, 2014, the Parties filed a Joint Motion for a Stay pending a decision by the Athens Court of Appeals [Dkt. No. 16], which was granted on March 28, 2014 [Dkt. No. 17]. On June 18, 2014, the Athens Court of Appeals issued a decision annulling the ICC award. See Consent Motion for Briefing Schedule [Dkt. No. 18]. On September 8, 2014, Petitioner filed a Motion to Confirm the Arbitration Award and Enter Judgment [Dkt. No. 20]. On November 17, 2014, Respondent filed a Cross-Motion to Dismiss or to Deny Petition to Confirm Award [Dkt. No. 25].

On January 9, 2015, Petitioner filed an appeal of the Athens Court of Appeals annulment decision with the Supreme Court of the Hellenic Republic ("the Greek Supreme Court"). As of November 6, 2015, the Parties had not received any decision by the Greek Supreme Court. Thereafter, the Parties filed Joint Status Reports on the proceedings before the Greek Supreme Court, until it issued a decision.

On November 2, 2016, the Parties filed a Joint Status Report notifying this Court of the September 22, 2016, decision of the Greek Supreme Court [Dkt. No. 48]. It ruled in favor of Petitioner LEIDOS, Inc. (formerly, Science Applications International Corporation) reversing the Athens Court of Appeals decision annulling the arbitration award, and thereby reinstating the original ICC award to Petitioner. In addition, the Greek Supreme

Court remanded the case back to the Athens Court of Appeals for a new hearing to address only one rather minor issue discussed in the Supreme Court's decision. That hearing is now scheduled for November 16, 2017.

In response to the November 2, 2016 Joint Status Report, the Court Ordered the Parties to submit their positions as to what, if anything, this Court should do, given the fact that the Greek Supreme Court had ruled [Dkt. No. 49]. On December 16, 2016, Petitioner submitted a Position Brief as to Impact on Its Arbitration Award Enforcement Petition of Supreme Court of the Hellenic Republic's Decision ("Pet.'s Position Br.") [Dkt. No. 51]. Respondent submitted its Position Statement that this Court should deny the Petitioner's request for enforcement of the decision of the Greek Supreme Court. [Dkt. No. 52].

## II.   STANDARD OF REVIEW

Under the New York Convention, which has been implemented by the Federal Arbitration Act, 9 U.S.C. § 201 et. seq., a court "may, if it considers it proper, adjourn the decision on the enforcement of the award. . . ," New York Convention Article VI (emphasis added), and stay proceedings where "a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside." Europcar Italia v. Maiellano Tours, Inc., 156 F.3d 310, 316-18 (2d Cir. 1998). But, of course, the court is not required to do so. See id.

In determining whether to enforce an Arbitration Award against a foreign state, this Court must balance the factors which weigh in favor of or against enforcement. Chevron Corp. and Texas Petroleum Company v. Republic of Ecuador, 949 F. Supp. 2d 57, 71-73 (D.D.C. 2013) (applying Europcar, 156 F.3d at 316-18).

In Europcar, the Second Circuit cautioned courts that "[a] stay of confirmation should not be lightly granted lest it encourage abusive tactics by the party that lost in arbitration." Europcar, 156 F.3d at 316-18. In order to aid judges as they exercise their discretion, the Second Circuit enumerated a number of factors that should be considered. They are:

"(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;

(2) the status of foreign proceedings and the estimated time for those proceedings to be resolved;

(3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;

(4) the characteristics of the foreign proceedings including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;

(5) a balance of the possible hardships to each of the parties, keeping in mind that if enforcement is postponed under Article VI of the Convention, the party seeking enforcement may receive "suitable security" and that, under Article V of the

Convention, an award should not be enforced if it is set aside or suspended in the originating country . . .; and

(6) any other circumstances that could tend to shift the balance in favor of or against adjournment."

Europcar, 156 F.3d at 317-18.

## III. ANALYSIS

### A. Factors One and Two

Factor One focuses on "the general objectives of arbitration—and the avoidance of protracted and expensive litigation." Europcar, 156 F.3d at 317. Factor Two focuses on "the status of the foreign proceedings and the estimated time for those proceedings to be resolved." Id. Given the fact that these two factors are so closely related, the Court will examine them together.

Stays are undesirable because "the adjournment of enforcement proceedings impedes the goals of arbitration – the expeditious resolution of disputes and the avoidance of protracted and expensive litigation." Id. It is clear that granting a stay in this case would thwart those fundamental objectives. The dispute between these two parties has now lasted almost 13 years. See Petition ¶ 14. The Petitioner, LEIDOS, filed its most recent demand for arbitration in June 2009 – seven and a half years ago. Petition ¶21. Petitioner filed a previous arbitration demand in 2006. Petition ¶ 14. The ICC tribunal issued its opinion in 2013. And,

finally, Petitioner predicts that it will take the Athens Court of Appeals and the Greek Supreme Court until at least 2020 to bring the case to an absolute end.   In sum, it will have taken—at a minimum—at least eleven years for the Petitioner to obtain the fruits of this specific litigation.

The Petitioner argues that "[g]ranting a stay in this case would thwart the objectives of arbitration." Pet.'s Position Br. at 7. The Court agrees. In fact, there can be little disagreement on this issue. As Petitioner has made clear, this dispute has already lasted almost 13 years and may well last, at a minimum, until 2020. If that prediction is accurate—and there have been many past road blocks and continuances in this litigation—it would mean that the litigation may last for well over 15 years.

Courts have found that the first and second factors weighed in favor of enforcement in cases involving far shorter litigation time periods. For example, in G.E. Transp.S.P.A. v. Republic of Albania, 693 F. Supp.2d 132, 139 (D.D.C.2010), this Court concluded that only four years from the time a complex case was in arbitration sufficed to "plainly weigh in favor of confirmation rather than adjournment." Id. This Court ruled similarly in Chevron Corp. and Texas Petroleum Company v. Republic of Ecuador, 949 F. Supp. 2d 57, 72 (D.D.C. 2013), because the case had been submitted to arbitration over six years earlier. The Court held that further delay would "surely . . . not constitute 'expeditious resolution'

of the dispute which originated [more than a decade earlier]."
Id.; see also Gold Reserve, Inc. v. Bolivarian Republic of
Venezuela, 146 F. Supp. 3d 112, 135 (D.D.C. 2015), appeal docketed,
No. 15-7158 (D.C. Cir., Dec. 30, 2015) (holding that the first
factor certainly favored enforcement rather than a stay of
proceedings when a petitioner had filed for arbitration more than
six years earlier).

Moving to the Second Factor, "the status of foreign
proceedings and estimated time for those proceedings to be
resolved," it must be remembered that although the Greek Supreme
Court reversed the set aside and reinstated the award, years still
remain to fully litigate the one minor issue that remains. When
foreign proceedings are not likely to be reversed in the near
future, Courts have concluded that the second factor weighs against
a stay of enforcement. See Chevron Corp., 949 F. Supp. 2d at 72.

For all these reasons, the Court concludes that there is no
question that Factors One and Two weigh strongly in favor of
granting the Petitioner's request for enforcement of the
arbitration award, which was upheld by the Greek Supreme Court.

B. **Factor Three**

Factor Three focuses on whether the award requested will be
judged in the foreign proceedings under a different and less
differential standard of review. Europcar, 156 F.3d at 317.

7

Regarding whether the Respondent's right to be heard will be reviewed with a differential standard, Petitioner argues that the Respondent will be unable to satisfy its burden of showing that the "standard is not so much more exacting than the one applied here." See Chevron Corp., 949 F. Supp. 2d at 72. There is nothing to suggest that a differential standard will be used, nor does Respondent refer to any change in the standard of review.

C. **Factor Four**

Factor Four raises a number of questions. First, item (i) of Factor Four asks "whether [the foreign proceedings] . . . were brought to enforce an award (which would tend to weigh in favor of the stay] or to set the award aside (which would tend to weigh in favor of enforcement)." The answer to that question is very simple and that is that the Respondent initiated the foreign proceedings to vacate the initial ICC Award. This clearly weighs in favor of enforcement.

Item (ii) of Factor Four questions whether the foreign proceedings were initiated before the underlying enforcement proceeding. Again, the answer is very simple, and that is they were not initiated before the underlying enforcement proceeding and, therefore, there needs to be no concern about international comity.

Item (iii) of Factor Four asks whether the foreign proceedings were initiated by the Party now seeking to enforce the award in

federal court. The answer is simple, namely, that they were not initiated by the Party now seeking to enforce the award. Respondent, not Petitioner, initiated the foreign proceedings; thus, this factors weighs in favor of enforcement as well. See Gold Reserve Inc., 146 F. Supp. 3d at 136.

Item (iv) of Factor Four asks whether the foreign proceedings were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute. While the Petitioner does at one point suggest such an intent on the part of Respondent, the Court does not have sufficient information to provide an answer.

Overall, Factor Four clearly weighs in favor of enforcement.

D. **Factors Five and Six**

Factors Five and Six may be viewed as residual factors- they direct the Court to consider "a balance of the possible hardships to the Parties," and if there is "[a]ny other circumstance that could tend to shift the balance in favor of or against adjournment," respectively. Europcar, 156 F.3d at 318. While there is little information given by the Parties about Factor Five, it is certainly clear that the Respondent, the Hellenic Republic, will not have to endure possible hardship given the fact that it is a country with a treasury and all the resources that a government has, whereas, the Petitioner is a private firm that may well suffer hardship for not gaining access to the substantial amount of money awarded by the Hellenic Supreme Court.

Neither party has presented any other factors that this court should consider under Factor Six.

### IV.   CONCLUSION

All of the issues covered by the Factors laid out in Europcar are overwhelmingly in favor of the Petitioner. Significantly, the Respondent has not been able to counter any of the reasons given to show that the Petitioner is clearly entitled to prevail.

For all the reasons given, the Court concludes that the Petitioner's Petition to Enforce the Award of the Hellenic Republic should be **granted**. An Order shall accompany this Memorandum Opinion.


January 5, 2017                     *Gladys Kessler*
                                    Gladys Kessler
                                    United States District Judge


**Copies to**: attorneys on record via ECF