UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

In The Matter of the Arbitration of Certain
Controversies Between

SCIENCE APPLICATIONS
INTERNATIONAL CORP.,

                            Petitioner,

    and

THE HELLENIC REPUBLIC,

                            Respondent.

Civil Action No. 13-cv-1070-EGS

**Motion of Petitioner the Hellenic Republic
for Ruling that the Judgment in this Case
Is Subject to the District of Columbia
Uniform Foreign-Money Claims Act**

Respondent The Hellenic Republic moves for a ruling that the judgment in this case (as

amended to conform to the D.C. Circuit's mandate) is subject to the District of Columbia

Uniform Foreign-Money Claims Act, D.C. Code §§ 15-901 et seq.

/s/ *Neal Goldfarb*
Neal Goldfarb, No. 337881
BUTZEL LONG, PC
1909 K Street, NW, Suite 500
Washington, DC 20006
(202) 454-2800
goldfarb@butzel.com

*Counsel for Appellant
The Hellenic Republic*

**Certification Under LCvR 7(m)**

I HEREBY CERTIFY that I have conferred with counsel for petitioner Leidos, Inc. in a good-faith effort to determine whether Leidos opposes the relief sought. (The nature of that relief is such that I do not believe that narrowing its scope would be possible.)  Counsel for Leidos has said that Leidos opposes the motion.

/s/ *Neal Goldfarb*
Neal Goldfarb

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In The Matter of the Arbitration of Certain Controversies Between<br><br>SCIENCE APPLICATIONS INTERNATIONAL CORP.,<br><br>                Petitioner,<br><br>  and<br><br>THE HELLENIC REPUBLIC,<br><br>              Respondent. | Civil Action No. 13-cv-1070-EGS |

**Memorandum in Support of
Motion of Petitioner the Hellenic Republic
for Ruling that the Judgment in this Case
Is Subject to the District of Columbia
Uniform Foreign-Money Claims Act**

Neal Goldfarb
BUTZEL LONG, PC
1909 K Street, NW, Suite 500
Washington, DC 20006
(202) 454-2800
goldfarb@butzel.com

*Counsel for Respondent
The Hellenic Republic*

# Contents

Table of Authorities ................................................................................................ ii

Introduction ......................................................................................................... 1

Statement of Facts ............................................................................................... 1

    A.  The arbitral award and Leidos's petition ........................................................ 1

    B.  The confirmation of the award and the postjudgment proceedings ................... 2

    C.  The appeal ................................................................................................ 4

    D.  This motion ............................................................................................... 4

Argument ............................................................................................................ 6

I.  Because the court of appeals did not reach the U.F.M.C.A. issue, that issue
remains open for this Court to decide on remand. ................................................. 6

II.  Although the judgment is governed by federal common law, the relevant
content of federal common law is "borrowed" from D.C. law. .................................. 7

    A.  When federal common law applies, there is a presumption that the
applicable rule of decision will be "borrowed" from state law. ........................... 7

    B.  The presumption in favor of borrowing from state law has not been
rebutted. ................................................................................................. 9

        1.  There is no need for uniform nationwide standards. .................................. 9

        2.  Entering foreign-currency judgments would not conflict with the
policies underlying federal arbitration law. ............................................. 11

        3.  The Court is not bound by previous cases in which the U.F.M.C.A.
was not applied, because in those case the issue was neither raised nor
decided. .......................................................................................... 12

    C.  D.C. law provides the source of the borrowed federal-common-law rule. ......... 13

Conclusion ......................................................................................................... 16

# Table of Authorities

## Cases

*Al-Bihani v. Obama*, 619 F.3d 1 (D.C. Cir. 2010)...........................................................................11

*\*American Electric Power Co. v. Connecticut*, 564 U.S. 410 (2011) ...............................................7

*Barkanic v. Gen. Admin. of Civil Aviation of the People's Republic of China*, 923
F.2d 957 (2d Cir. 1991) ...........................................................................................14

*Bassidji v. Goe*, 413 F.3d 928 (9th Cir. 2005) ...............................................................................11

*Belize Bank Ltd. v. Government of Belize*, 191 F. Supp. 3d 26 (D.D.C. 2016), *aff'd
on other grounds*, 852 F.3d 1107 (D.C. Cir. 2017) ................................................12

*Bismullah v. Gates*, 551 F.3d 1068 (D.C. Cir. 2009) .....................................................................13

*Chan v. Society Expeditions, Inc.*, 123 F.3d 1287 (9th Cir. 1997) ..................................................14

*Chau Kieu Nguyen v. JP Morgan Chase Bank, NA*, 709 F.3d 1342 (11th Cir. 2013)....................14

*City of Cleveland, Ohio v. Federal Power Comm'n*, 561 F.2d 344 (D.C.Cir.1977) .......................6

*Competex, S.A. v. Labow*, 783 F.2d 333 (2d Cir. 1986) ...........................................................15, 16

*Continental Transfer Technique Ltd. v. Federal Government of Nigeria*, 603
Fed. Appx. 1 (D.C. Cir. 2015)..................................................................................12

*Continental Transfer Technique Ltd. v. Federal Government of Nigeria*, 932 F.
Supp. 2d 153 (D.D.C. 2013), *aff'd in part*, 603 Fed. Appx. 1 (D.C. Cir.
2015) ........................................................................................................................12

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004) ....................................................13

*Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786 (2d Cir.
1980) ........................................................................................................................14

*Cunningham v. Quaker Oats Co., Fisher-Price Div.*, 639 F. Supp. 234 (W.D.N.Y.
1986) ........................................................................................................................15

*DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918 (6th
Cir. 2006) .................................................................................................................14

*Eli Lilly Do Brasil, Ltda. v. Federal Express Corp.*, 502 F.3d 78 (2d Cir. 2007) .........................14

*\*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006)..............................................7

*Erie R. R. v. Tompkins*, 304 U.S. 64 (1938) ...........................................................................11, 13

---

\* Citations principally relied upon are marked with an asterisk.

*G.E. Transport S.p.A. v. Republic of Albania*, 693 F. Supp. 2d 132 (D.D.C. 2010) ...............12, 13

*In re Good Hope Chemical Corp.*, 747 F.2d 806 (1st Cir. 1984) ...................................................16

*Ingersoll Milling Machine, Co. v. Granger*, 833 F.3d 680 (7th Cir. 1987) ..................................15

*\*Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991) ..........................................................7, 8

*Leidos, Inv. v. Hellenic Republic*, 881 F.3d 213 (D.C. Cir. 2018) ........................................4, 6, 15

*LaShawn A. v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996) (en banc) .................................................13

*Maggard v. O'Connell*, 703 F.2d 1284 (D.C.Cir.1983) ...............................................................6

*Manches & Co. v. Gilbey*, 646 N.E.2d 86 (Mass. 1995) .............................................................16

*McKesson Corp. v. Islamic Republic of Iran*, 116 F. Supp. 2d 31 (D.D.C. 2000),
    *rev'd in part on other grounds*, 271 F.3d 1101 (D.C. Cir. 2001) ..........................................12

*Mitsui & Co., Ltd. v. Oceantrawl Corp.*, 906 F. Supp. 202 (S.D.N.Y. 1995) .............................16

*Mohamad v. Rajoub*, 634 F.3d 604 (D.C. Cir. 2011), *aff'd sub nom. Mohamad v.*
    *Palestinian Auth.*, 566 U.S. 449 (2012) ..................................................................................10

*Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127 (2d Cir. 1986) ....................................15

*Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902 (D.C. Cir. 2006) ....................................13

*In re Oil Spill by the Amoco Cadiz off the Coast of France on March 16, 1978*,
    954 F.2d 1279 (7th Cir. 1992) ...............................................................................................16

*Oveissi v. Islamic Republic of Iran*, 573 F.3d 835 (D.C. Cir. 2009) ........................................14

*Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L.*, 422 F. Supp. 405
    (N.D. Ill. 1976) ........................................................................................................................11

*Parker v. Hoppe*, 178 N.E. 550 (N.Y. 1931) .............................................................................15

*Reissner v. Rogers*, 276 F.2d 506 (D.C. Cir. 1960) ..................................................................16

*ReliaStar Life Ins. Co. v. IOA Re, Inc.*, 303 F.3d 8743 (8th Cir. 2002) ...................................16

*Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342 (5th Cir. 2016) .....................................14

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) .......................................................................10

*Taubenfeld v. Taubenfeld*, 97 N.Y.S. 2d 158 (Sup. Ct. 1950) ...................................................15

*Tramontana v. S.A. Empresa de Viacao airea Rio Grandense*, 350 F.2d 468 (D.C.
    Cir. 1965) ................................................................................................................................16

*United States on behalf of Dep't of Labor v. Insurance Co. of North America*, 131
    F.3d 1037 (D.C. Cir. 1997) ......................................................................................................6

*\*United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979) ......................................................7

*Webster v. Fall,* 266 U.S. 507 (1925) ........................................................................13

*\*Wilson v. Omaha Indian Tribe*, 442 U.S. 653 (1979) .................................................7

**Statutes, Treaty, and Rules**

Federal Arbitration Act, 9 U.S.C. §§ 201 et seq. ...............................................2, 7, 14

28 U.S.C. § 1332(a)(2) ................................................................................................11

28 U.S.C. § 1332(a)(4) ................................................................................................11

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1601 et seq. ...........................5, 8, 14
    28 U.S.C. § 1606 ...................................................................................................8, 11
    28 U.S.C. § 1609 ........................................................................................................14
    28 U.S.C. § 1609-1611 ................................................................................................5

*\*District of Columbia Uniform Foreign-Money Claims Act,*
    D.C. Code §§ 15-901 et seq. ........................................................................ *passim*
    § 15-901(3) ..............................................................................................................4, 5
    § 15-903 .........................................................................................................................
    § 15-906(a) ....................................................................................................................3
    § 15-906(b) ................................................................................................................4, 5
    § 15-913(b) ..................................................................................................................13

Convention on the Recognition and Enforcement of Foreign Arbitral Awards,
    Dec. 29, 1970, 21 U.S.T. 25157, T.I.A.S. 6997, 390 U.N.T.S. 38 (1970) ................2, 7, 9, 10,
        11, 13, 14

    *\*Art. III ......................................................................................................................10
    Art. IV-XVI .................................................................................................................10

Fed. R. Civ. P. 59(e) ......................................................................................................3

Fed. R. Civ. P. 60 ...........................................................................................................3

**Other Authorities**

Restatement (Second) of Conflict of Laws .............................................................14, 15
    Ch. 6 ............................................................................................................................15
    § 122 ...........................................................................................................................14
    § 144 ...........................................................................................................................15

Restatement (Third) of the Foreign Relations Law of the United States § 823 ............15

Michael Steven Green, *Erie's International Effect*, 107 Nw. U. L. Rev. Colloquy 165 (2012) ....11

Respondent's Prelim. Response to Pet. to Confirm Arb. Award, *Belize Bank Ltd. v. Government of Belize* at 48, ECF 13, No. 14-cv-659 (D.D.C. filed Aug. 8, 2014) ..........................................................................................................................13

Defendant Nigeria's Supp. Mem. of Pts. & Auths., *Continental Transfert Technique, Ltd. v. Federal Bank of Nigeria*, ECF 59, No. 08-cv-2026 (D.D.C. filed May 30, 2012)..............................................................................................................12

Brief of Appellants/Cross-Appellees, *Continental Transfert Technique, Ltd. v. Federal Government of Nigeria*, No. 11-7103 (D.C. Cir. filed Nov. 12, 2013)......................12

Reply Brief of Appellants/Cross-Appellees, *Continental Transfert Technique, Ltd. v. Federal Government of Nigeria*, No. 11-7103 (D.C. Cir. filed Jan. 21, 2014) ...................12

## Introduction

This case is before the Court on remand by the D.C. Circuit, following the Hellenic Republic's appeal from the action by this Court (per Kessler, J.) amending the judgment against it, so that the principal amount of the judgment was stated in dollars rather than in euros, as the judgment had originally provided. The court of appeals reversed, and remanded with instructions to restate the amount of the judgment (except for the arbitration costs) in euros.

By this motion, the Hellenic Republic seeks a ruling on an issue that was raised in the court of appeals but not decided. Specifically, the Hellenic Republic seeks a ruling that the judgment here (as amended to conform to the D.C. Circuit's mandate) is subject to the provisions of District of Columbia Uniform Foreign-Money Claims Act, D.C. Code §§ 15-901 et seq. As we will explain, that statute's provisions are applicable even though the judgment is ultimately governed by federal common law, because the applicable federal-common-law rule is required to be "borrowed" from the law of the forum jurisdiction, which in this case is the District of Columbia. And the relevant provisions of District of Columbia law are those set out in the Uniform Foreign-Money Claims Act.

## Statement of Facts[1]

### A.   The arbitral award and Leidos's petition

This case arises from an international arbitration award that was obtained by petitioner Leidos, Inc. (then named Science Applications International Corp.) against respondent the Hellenic Republic. The award was in the amount of €39,818,298 plus arbitration fees of $162,500.[2] Shortly after the award was rendered, Leidos commenced this action by filing a petition seeking to have the

---

1. In citations to the record in this case, when the original document's page number differs from the page number in the ECF header, citations to a specific page refer to the latter.

2. ECF No. 1 at 10-11; ECF No. 5-5 at ECF header page no. 427.

award confirmed and enforced.[3] The petition was filed under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (known as "the New York Convention")[4] and the federal legislation implementing the Convention.[5]

In its petition, Leidos demanded "judgment in favor of Petitioner and against Respondent in Euros and US dollars in accordance with the Final Award."[6] Consistently with that request, the petition was accompanied by a proposed order seeking judgment for "[the] Final Award amount of €39,818,298" and for "arbitration fees awarded to SAIC in the amount of $162,500."[7] Later in the proceedings, Leidos twice repeated its request for a judgment stated in euros and dollars, by submitting proposed orders substantially identical to the first one.[8]

## B.   The confirmation of the award and the postjudgment proceedings

The district court granted Leidos's petition and confirmed the arbitral award.[9] Neither the court's order nor its memorandum opinion specified the amount in which judgment would be entered. Judgment was entered by the Clerk as follows: "Judgment is entered in favor of Petitioner Leidos, Inc. and against the Hellenic Republic, in the amount of €39,818,298."[10] Thus, Leidos obtained judgment for the principal amount of the award, in the amount that it had requested, and with that amount being stated in euros, as it had requested.

---

3. ECF No. 1.

4. 21 U.S.T. 25157, T.I.A.S. No. 6997, 390 U.N.T.S. 38 (1970).

5. 9 U.S.C. § 201 et seq.

6. ECF No. 1 at 12 (emphasis added).

7. ECF No. 1-12.

8. ECF Nos. 20-1, 30-9.

9. ECF Nos. 53 (order), 54 (memorandum opinion).

10. ECF No. 55.

Shortly after final judgment was entered, Leidos apparently changed its mind about wanting to have the amount of the judgment stated in both euros and dollars. It therefore moved under Fed. R. Civ. P. 59(e) to alter or amend the judgment so that the euro amount would be converted to dollars, using the exchange rate that was in effect on the day the arbitral award had been issued.[11]

The Hellenic Republic opposed Leidos's motion, on two independent grounds. *First*, it argued that Leidos had not satisfied the requirements of postjudgment relief under Rule 59(e).[12] Specifically, Leidos had not asked for a judgment stated only in dollars until after the entry of finaly judgment, at which point it was too late. And in any case, "it could not possibly constitute 'a clear error' or a 'manifest injustice' for the [district court] to grant Leidos the precise relief that it asked for."[13] *Second*, the Hellenic Republic argued that the applicable rule of decision on the currency issue is set out by the D.C. Uniform Foreign-Money Claims Act (U.F.M.C.A.),[14] which (1) is implicitly incorporated into federal common law and (2) requires that the judgment be stated in "the money of the claim," which in this case was euros.[15]

A separate provision of the U.F.M.C.A. is relevant to this motion. It provides that in cases where the amount of the judgment is stated in a foreign currency, the judgment "is payable in [the relevant] foreign money or, at the option of the debtor, in the amount of United States dollars which

---

11. ECF No. 56. Leidos also invoked Fed. R. Civ. P. 60 to request that the judgment include the $162,500 in fees in arbitration fees (referred to above) and prejudgment interest, both of which had been provided included in the award but left out of the judgment, as well as interest on the judgment. The Hellenic Republic did not oppose those requests.

12. ECF No. 57 at 4-5.

13. *Id*. at 4.

14. D.C. Code §§ 15-901 *et seq*

15. ECF No. 57 at 6-13. *See* D.C. Code § 15-906(a) ("Except as provided in subsection (c) of this section [regarding costs], a judgment or award on a foreign-money claim must be stated in an amount of the money of the claim.").

will purchase that foreign money on the conversion date at a bank-offered spot rate."[16] (The "conversion date" is "the banking day next preceding" the payment of the money to the claimant or to the official enforcing the judgment on the claimant's behalf, or the exercise of a recoupment, set-off, or counterclaim.[17])

The district court granted Leidos's motion and entered an amended judgment that was stated entirely in dollars.

## C.  The appeal

The Hellenic Republic appealed the district court's decision and the court of appeals reversed, remanding the case with instructions "to reenter judgment in accordance with the arbitral award."[18] The reversal was based entirely on the conclusion that Leidos had not been entitled to postjudgment relief under Rule 59(e); the court of appeals expressly declined to reach the question whether the judgment is governed by the U.F.M.C.A. (as implicitly incorporated into federal law).[19]

## D.  This motion

The Hellenic Republic is seeking a determination that the judgment here is subject to the U.F.M.C.A., because such a determination will have consequences with respect to issues that may arise in connection with the payment or enforcement of the judgment.

As we have noted, the U.F.M.C.A. provides that when amount of the judgment is stated in a foreign currency, the judgment "is payable in [the relevant] foreign money or, at the option of the debtor, in the amount of United States dollars which will purchase that foreign money on the

---

16. D.C. Code § 15-906(b).

17. D.C. Code § 15-901(3).

18. *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 220 (D.C. Cir. 2018).

19. *Id.*

conversion date at a bank-offered spot rate[,]"[20] with the "conversion date" being "the banking day next preceding" the payment of the money to the claimant or to the official enforcing the judgment on the claimant's behalf, or the exercise of a recoupment, setoff, or counterclaim.[21] That provision establishes that in the cases to which it applies, the fact that the amount of a judgment is stated in a foreign currency does not prevent the judgment debtor from making payments on the judgment in the form of dollars. Without that provision, It is unclear whether the judgment debtor would have that right.

The provision also specifies the exchange rate to be applied if the judgment debtor makes a payment in the form of dollars, or if the judgment creditor enforces the judgment against assets in the form of dollars (for example, a bank account). If that provision did not apply, the choice of the relevant exchange rate would be subject to dispute. (And given that Leidos has said that it will oppose this motion, it is reasonable to assume that it would prefer a different exchange rate.)

Although it is not possible to know whether either of the situations we have described will come to pass, we believe that it would make sense for the issue to be decided now, rather than deferring it until later. Moreover, if the Hellenic Republic waited to raise this issue until sometime in the future, it might well face the argument that it had waived the issue by not asserting it sooner. This motion is therefore being filed now rather than at some later date.[22]

---

20. D.C. Code § 15-906(b).

21. D.C. Code § 15-901(3).

22. Counsel for the Hellenic Republic wishes to note that despite having made inquiries of his client, he has no concrete information about the Hellenic Republic's plans regarding the judgment. Therefore, this motion should not be construed as indicating anything on that score. In addition, counsel has no information as to whether there exist any assets against which the judgment here could be enforced, given the limitations imposed by the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1609-1611.

## Argument

We begin our argument by showing that the decision of the court of appeals does not prevent this Court from considering and deciding the issue that this motion presents. We then show that although the judgment in this case is governed by federal common law, the relevant content of that federal common law should be "borrowed" from the law of the District of Columbia, much the same way that when Congress creates a federal cause of action but does not specify a limitations period, the general rule is that the federal courts should apply the analogous statute of limitations from the law of the forum state.

## I.   Because the court of appeals did not reach the U.F.M.C.A. issue, that issue remains open for this Court to decide on remand.

Although this Court is bound by the D.C. Circuit's mandate, it is not barred from resolving issues that were raised on appeal but not decided, which are therefore outside the mandate's scope.[23] "The mere fact that [an issue] could have been decided is not sufficient to foreclose the issue on remand."[24]

As we have said, the court of appeals based its decision entirely on Leidos's lack of entitlement to postjudgment relief. It therefore did not consider or decide the question whether the governing rule of federal common law should be borrowed from the law of the District of Columbia. Indeed, it expressly declined to reach that issue.[25] As a result, this Court is free to decide the issue on remand.

---

23. *United States on behalf of Dep't of Labor v. Insurance Co. of North America*, 131 F.3d 1037, 1040–41 (D.C. Cir. 1997); *Maggard v. O'Connell*, 703 F.2d 1284, 1289 (D.C.Cir.1983); *City of Cleveland, Ohio v. Federal Power Comm'n*, 561 F.2d 344, 348 (D.C.Cir.1977).

24. *Maggard*, 703 F.2d at 1289.

25. 881 F.3d at 220.

## II.  Although the judgment is governed by federal common law, the relevant content of federal common law is "borrowed" from D.C. law.

The enforcement in the United States of international arbitration awards is governed by federal law: the New York Convention[26] and the Federal Arbitration Act.[27] And because neither of those sources of law (or any other federal statute) deals with issues relating to the entry of foreign-currency judgments, that issue is controlled by federal common law.

But that does not mean that state law is irrelevant. As we explain below, the threshold question in determining the content of federal common law is whether to "borrow" from state law or instead to formulate a uniform federal rule. And in this case, borrowing from state law (or, as here, from D.C. law) is the appropriate course of action.

### A.  When federal common law applies, there is a presumption that the applicable rule of decision will be "borrowed" from state law.

As the Supreme Court has said, "Controversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules."[28] Unless there is "a demonstrated need" for rules fashioned by *federal* courts,[29] the rule of decision is to be provided by state law, which will be absorbed for this purpose into the federal common law rather than applying of its own force.[30] Thus, the Supreme Court explained in *Kamen v. Kemper Financial Services, Inc.* that "a court should endeavor to fill the interstices of federal

---

26. 21 U.S.T. 25157, T.I.A.S. 6997, 390 U.N.T.S. 38 (1970).

27. 9 U.S.C. §§ 201 et seq.

28. *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 727-28 (1979). *See also, e.g.*, *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 422 (2011); *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 691 (2006); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991); *Wilson v. Omaha Indian Tribe*, 442 U.S. 653, 671-72 (1979).

29. *American Electric Power Co.*, 564 U.S. at 422.

30. *Id.*; *Empire Healthchoice Assur., Inc.*, 547 U.S. at 691; *Kamen*, 500 U.S. at 98; *Wilson*, 442 U.S. at 671-72; *Kimbell Foods,* 440 U.S. at 727-29.

remedial schemes with uniform federal rules" only under certain limited circumstances: (1) "when the scheme in question evidences a distinct need for nationwide legal standards," (2) "when express provisions in analogous statutory schemes embody congressional policy choices readily applicable to the matter at hand," or (3) if applying the state rule in question "would frustrate specific objectives of the federal programs."[31]

Moreover, the Supreme Court has said that the presumption in favor of borrowing state law "is particularly strong in areas in which private parties have entered legal relationships with the expectation that their rights and obligations would be governed by state-law standards."[32] Although that statement does not literally cover this case, since the contract here was governed by Greek law and the Hellenic Republic is not a private entity, the statement's underlying logic does apply here. When considered in the context of this case, the Court's reference to "state-law standards" should be understood to refer to standards under non-federal law, a category that includes standards under the law of a foreign nation. And although the Hellenic Republic is not a private party, it is amenable to suit here only under the Foreign Sovereign Immunities Act, which provides that with respect to any claim as to which a foreign states is not immune, the foreign state will (subject to certain exceptions that do not apply here) "be liable in the same manner and to the same extent as a private individual under like circumstances."[33]

Thus, the contract here was a commercial contract that was not different in any relevant respect from a commercial contract between two private entities. Except for issues relating specifically to the possible confirmation and enforcement in the United States of an arbitral award

---

31. *Kamen*, 500 U.S. at 98.

32. *Kamen*, 500 U.S. at 98.

33. 28 U.S.C. § 1606. The provision quoted in the text is subject to certain exceptions that are not relevant here.

rendered in Greece, the parties had no expectation that their rights and obligations would be governed by U.S. federal law, or indeed by U.S. law of any kind.[34] So Leidos had no expectations that would be upset by borrowing from D.C. law here in order to provide the applicable federal-common-law rule.

## B.  The presumption in favor of borrowing from state law has not been rebutted.

*1.  There is no need for uniform nationwide standards.*

Leidos has never seriously contended that any federal interest requires that the rulea governing judgments on foreign-currency claims be nationally uniform. It made no such argument in support of its motion to alter or amend; in fact, it did not disagree with the Hellenic Republic's statement that there exists "no uniquely federal need" for such uniform rules.[35] And on appeal, Leidos barely touched on the issue.

Even apart from Leidos's failure to argue the issue, the fact is that no federal interests will be impaired by borrowing from state law. It is entirely consistent with the regime established by the New York Convention to permit a lack of uniformity as to the issues covered by the U.F.M.C.A. That is because the Convention expressly contemplates that the rules and procedures governing recognition and enforcement of arbitral awards will *not* be uniform.[36]

The Convention provides that, with exceptions that are irrelevant apply here, the enforcement of arbitral awards is governed by "the rules of procedure of the territory where the award is relied

---

34.  ECF No. 1-7 at ECF header page no. 80.

35.  ECF Nos 57 at 7 (Hellenic Republic opposition); ECF No. 58 at 7 (Leidos reply).

36.  Leidos Ct. App. Br 26-42. For purposes of this discussion, we assume that D.C. law provides the relevant "state" law.  In the final section of this memorandum, we will show that the District of Columbia is in fact the relevant jurisdiction.

upon[.]"[37] The first exception is that recognition and enforcement proceedings are subject to the conditions stated in Articles IV-XVI or the convention.[38] Leidos has never contended that any of those conditions would prevent federal courts in the United States from applying rules borrowed from state law. The second exception is that the jurisdiction where enforcement is sought may not impose "substantially more onerous conditions or higher fees or charges on the recognition or enforcement of arbitral awards to which this Convention applies than are imposed on the recognition or enforcement of domestic arbitral awards."[39] There is no conflict with that restriction, either: the U.F.M.C.A. makes no distinction between domestic and international arbitration awards.

Nor has Leidos ever identified any other federal interest that would require nationwide uniformity. It argued in the court of appeals that this case "falls into the enclave of federal common law because the duties and obligations of the United States are involved and because of the international nature of the matter."[40] But we have already shown that nationwide uniformity is not required by the New York Convention, and Leidos identified no other international obligation would rule out borrowing from state law. (If any such obligations existed, they would presumably preempt the U.F.M.C.A., at least in part, even in state-court litigation.) Similarly, Leidos has never pointed to any principle of customary international law supporting its position. And even if any such principle existed, it would not be incorporated into federal law without some specific basis in statute or statutorily-authorized executive action.[41]

---

37. New York Convention, Art. III.

38. *Id.*

39. *Id.*

40. Leidos Ct. App. Br. 31-32.

41. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 728-31 & n.19 (2004); *Mohamad v. Rajoub*, 634 F.3d 604, 609-10 (D.C. Cir. 2011), *aff'd sub nom. Mohamad v. Palestinian Auth.*, 566 U.S. 449

Moreover, no uniquely federal interest arises from the mere fact that Leidos is a U.S. entity and the Hellenic Republic is not. In cases within the federal courts' alienage jurisdiction,[42] *Erie* applies just as it does in suits between citizens of different U.S. states.[43] Nor does the fact that the Hellenic Republic is a foreign nation require that there be nationwide uniformity And as we have already noted, in cases where a foreign nation is amenable to suit, it is (with immaterial exceptions) "liable in the same manner and to the same extent as a private individual under like circumstances[.]"[44]

2.  *Entering foreign-currency judgments would not conflict with the policies underlying federal arbitration law.*

As is clear from what we have said so far, borrowing from District of Columbia law would not conflict with anything in the New York Convention or in the Federal Arbitration Act, which implements the Convention.

Leidos relied in the court of appeals on the fact that the FAA displaces state law regarding international commercial arbitration agreements and arbitral awards based on such agreements.[45] But that displacement is irrelevant here, because the issues to which the U.F.M.C.A. relates are beyond its scope.

---

(2012);  *Al-Bihani v. Obama*, 619 F.3d 1, 17-20 (D.C. Cir. 2010) (Kavanaugh, J., concurring in the denial of rehearing en banc).

42. 28 U.S.C. § 1332(a)(2), -(4).

43.  *See, e.g.*, *Bassidji v. Goe*, 413 F.3d 928, 932–33 (9th Cir. 2005); *Pancotto v. Sociedade de Safaris de Mocambique, S.A.R.L.*, 422 F. Supp. 405, 406–07 (N.D. Ill. 1976); Michael Steven Green, *Erie's International Effect*, 107 Nw. U. L. Rev. Colloquy 165, 165-70 (2012).

44.  28 U.S.C. § 1606.

45. Leidos Ct. App. Br. 31.

The U.F.M.C.A. is not a law that relates to arbitration agreements or to the enforcement of arbitral awards. That it doesn't relate to arbitration agreements is obvious. And it similarly does not deal with the enforcement of foreign arbitral awards. Rather, it relates to the entry of judgments on foreign-currency claims generally, regardless of whether the judgments result from ordinary domestic litigation, from litigation to enforce domestic arbitral awards, from recognition of the judgments of a foreign court, or the from confirmation of a foreign arbitral award. All such judgments are treated alike.

*3.* *The Court is not bound by previous cases in which the U.F.M.C.A. was not applied, because in those case the issue was neither raised nor decided.*

In the previous proceedings in this court, and on appeal, Leidos relied on several cases (an unreported D.C. Circuit decision and several decisions of this Court) in which the U.F.M.C.A. was not applied, or even cited, with respect to claims payable in foreign currencies.[46] But those cases do not constitute *stare decisis* on the issue now before the Court, because in those cases, that issue was neither raised by one of the parties nor considered by the court.[47] As both the Supreme Court and the

---

46. *Continental Transfer Technique Ltd. v. Federal Government of Nigeria*, 603 Fed. Appx. 1 (D.C. Cir. 2015); *Continental Transfer Technique Ltd. v. Federal Government of Nigeria*, 932 F. Supp. 2d 153 (D.D.C. 2013), *aff'd in part*, 603 Fed. Appx. 1 (D.C. Cir. 2015); *Belize Bank Ltd. v. Government of Belize*, 191 F. Supp. 3d 26, 39-40, 2016 WL 3198228 (D.D.C. 2016), *aff'd on other grounds*, 852 F.3d 1107 (D.C. Cir. 2017); *G.E. Transport S.p.A. v. Republic of Albania*, 693 F. Supp. 2d 132, 139-40 (D.D.C. 2010); *McKesson Corp. v. Islamic Republic of Iran*, 116 F. Supp. 2d 31, 38-39 (D.D.C. 2000), *rev'd in part on other grounds*, 271 F.3d 1101 (D.C. Cir. 2001)).

47. With respect to the parties' failure to raise the issue, see the following:

**As to *Continental Transfer Technique* on appeal:** Brief of Appellants/Cross-Appellees, *Continental Transfer Technique, Ltd. v. Federal Government of Nigeria*, No. 11-7103 (D.C. Cir. filed Nov. 12, 2013); Reply Brief of Appellants/Cross-Appellees, *Continental Transfer Technique, Ltd. v. Federal Government of Nigeria*, No. 11-7103 (D.C. Cir. filed Jan. 21, 2014).

**As to *Continental Transfer Technique* in the district court:** Defendant Nigeria's Supp. Mem. of Pts. & Auths., *Continental Transfert Technique, Ltd. v. Federal Bank of Nigeria*, ECF 59, No. 08-cv-2026 (D.D.C. filed May 30, 2012).

D.C. Circuit have said, "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not considered as having been so decided as to constitute precedents."[48]

## C. D.C. law provides the source of the borrowed federal-common-law rule.

Once it is accepted that the rule of decision under federal common law will be borrowed from state law, the question arises as to *which* state's law will be borrowed. As noted above in footnote 36, we have been assuming that the relevant state law is the law of the District of Columbia (which is treated as state law for this purpose[49]). We will now show that D.C. law is in fact the appropriate choice.

If that issue is to be decided by referring to D.C. choice-of-law principles, the law to be borrowed would be D.C. law. By its own terms, the D.C. U.F.M.C.A. "applies to foreign money issues even if other law, under the conflict of laws rules of the District of Columbia, applies to other issues in the action or distribution proceeding."[50] However, because this case arises under federal law (the New York Convention, the Federal Arbitration Act, and the Foreign Sovereign Immunities

---

As to ***Belize Bank***: Respondent's Prelim. Response to Pet. to Confirm Arb. Award, *Belize Bank Ltd. v. Government of Belize* at 48, ECF 13, No. 14-cv-659 (D.D.C. filed Aug. 8, 2014).

As to ***G.E. Transport S.p.A.***: *G.E. Transport S.p.A.*, 693 F. Supp. 2d 132 (entering judgment by default).

As to ***McKesson Corp.***: The filings that would reveal what was and was not argued were not submitted electronically and are not available on PACER. However it seems probable that the issue was not raised, given how short and conclusory the court's discussion of the currency issue was. 116 F. Supp. 2d at 38-39.

48. *Webster v. Fall,* 266 U.S. 507, 511 (1925); *LaShawn A. v. Barry*, 87 F.3d 1389, 1395 n.7 (D.C. Cir. 1996) (en banc). *See, also, e.g.*, *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004); *Bismullah v. Gates*, 551 F.3d 1068, 1071 (D.C. Cir. 2009).

49. *See, e.g.*, *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) (for purposes of *Erie* analysis, D.C. law is treated as if it were state law).

50. D.C. Code § 15-913(b).

Act), the choice-of-law analysis is governed by federal common law, which for this purpose does not necessarily borrow from state law.[51] Nevertheless, the result is the same as under D.C. conflicts law: the rule to be incorporated into federal common law is provided by the law of the forum state.

As the starting point for the choice-of-law analysis under federal common law, courts often look to the Restatement (Second) of Conflict of Laws,[52] which incorporates the traditional rule that matters of procedure—or, in the Restatement's terminology, "judicial administration"—are governed by the law of the forum.[53] The question whether judgment on a foreign-currency claim should be entered in that currency or in dollars is quintessentially procedural, dealing as it does with the way in which judicial acts should be framed.

This issue was not specifically addressed in the Restatement (Second) of Conflict of Laws, which was issued in 1971, at a time when it was thought that U.S. courts could not issue foreign-

---

51. *See, e.g.*, *Singletary v. United Parcel Serv., Inc.*, 828 F.3d 342, 351 (5th Cir. 2016); *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 795 (2d Cir. 1980). *But cf. Barkanic v. Gen. Admin. of Civil Aviation of the People's Republic of China*, 923 F.2d 957, 961 (2d Cir. 1991) (court in federal-question case may borrow choice-of-law rule from state law "if [it] believe[s] that doing so would best effectuate Congress' overall intent").

The D.C. Circuit has held that in cases under the Foreign Sovereign Immunities Act, the forum state's choice-of-law rules should be followed, because the FSIA provides (in 28 U.S.C. § 1609) that when a foreign-government defendant is not immune, it "shall be held liable in the same manner and to the same extent as a private individual under like circumstances[,]" and claims under the FSIA are typically based on state law. *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 841-42 (D.C. Cir. 2009). Nevertheless, we will assume that *Oveissi* is inapposite, because federal law (the New York Convention and the Federal Arbitration Act) would have applied even if Leidos had been seeking to enforce an international arbitration award against a private entity.

52. *E.g.*, *Chau Kieu Nguyen v. JP Morgan Chase Bank, NA*, 709 F.3d 1342, 1345 (11th Cir. 2013); *Eli Lilly Do Brasil, Ltda. v. Federal Express Corp.*, 502 F.3d 78, 81 (2d Cir. 2007); *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006).

53. Restatement (Second) of Conflict of Laws § 122.

currency judgments—a view that has since been rejected.[54] But the Restatement does address the closely related issue of what exchange rate should be used in converting the amounts of foreign-currency claims into dollars for purposes of entering judgment.[55] (What makes that issue analogous to the one here is that entering judgment in a foreign currency is economically equivalent to entering judgment in dollars, with the dollar amount to be computed using the exchange rate in effect on the date of payment.[56]) The Restatement section dealing with the exchange-rate issue appears in the chapter on procedure, and it treats the issue as a procedural matter by prescribing a rule to be applied as the law of the forum.[57] And the same approach is taken by Section 823 of the Restatement (Third) of the Foreign Relations Law of the United States, which essentially supersedes the Restatement (Second) of Conflicts on this issue.

The conclusion that forum-state law is to be applied is also supported by the caselaw. In a number of cases dealing with the exchange-rate issue, the forum-state's rule has been held to be applicable.[58] Moreover, at least one decision has said that such a conclusion means that for choice-of-law purposes, the issue is considered to be procedural.[59] Other cases dealing with the exchange-rate issue (including two from this circuit) have tacitly treated the issue as being governed by the law

---

54. For discussion of this history, see, *e.g.*, the D.C. Circuit's discussion in its decision in this case. 881 F.3d at 218 & n.5.

55. *Id.* § 144.

56. *E.g.*, *Competex, S.A. v. Labow*, 783 F.2d 333, 337, 338 (2d Cir. 1986).

57. Restatement (Second) of Conflict of Laws § 144 (appearing in Ch. 6).

58. *E.g.*, *Ingersoll Milling Machine, Co. v. Granger*, 833 F.3d 680, 692 (7th Cir. 1987); *Newmont Mines Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 138 (2d Cir. 1986); *Parker v. Hoppe*, 178 N.E. 550, 551-52 (N.Y. 1931); *Taubenfeld v. Taubenfeld*, 97 N.Y.S. 2d 158, 160 (Sup. Ct. 1950).

59. *Cunningham v. Quaker Oats Co., Fisher-Price Div.*, 639 F. Supp. 234, 240 (W.D.N.Y. 1986).

of the forum, as indicated by the absence of any explicit choice-of-law analysis.[60] And the same is true of a number of cases in which courts stated that it was permissible to enter judgments stated in a foreign currency.[61]

Finally, we note that Leidos has never disputed the proposition that if borrowing from state law is appropriate, the relevant law is that of the District of Columbia.

### Conclusion

For the reasons stated above, the Court should rule that the judgment in this case (as amended to conform to the D.C. Circuit's mandate) is subject to the District of Columbia Uniform Foreign-Money Claims Act.

Respectfully submitted,

/s/ *Neal Goldfarb*

Neal Goldfarb, No. 337881
BUTZEL LONG, PC
1909 K Street, NW, Suite 500
Washington, DC 20006
(202) 454-2800
goldfarb@butzel.com

*Counsel for Appellant The Hellenic Republic*

---

60. **D.C. Circuit**: *Tramontana v. S.A. Empresa de Viacao airea Rio Grandense*, 350 F.2d 468, 477-78 (D.C. Cir. 1965); *Reissner v. Rogers*, 276 F.2d 506, 511 (D.C. Cir. 1960). **Other courts**: *In re Good Hope Chemical Corp.*, 747 F.2d 806, 809-12 (1st Cir. 1984); *Competex, S.A. v. Labow*, 783 F.2d at 335-41; *Manches & Co. v. Gilbey*, 646 N.E.2d 86, 87-89 (Mass. 1995).

61. *E.g.*, *ReliaStar Life Ins. Co.*, 303 F.3d at 882-83; *In re Oil Spill by Amoco Cadiz*, 954 F.2d at 1327-30; *Mitsui & Co.*, 906 F. Supp. at 203-04.